AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
### Northern District of New York

U.S. DISTRICT COURT - N.D. OF N.Y.
FILED
JUN 28 2019
AT____ O'CLOCK____
John M. Domurad, Clerk - Plattsburgh

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| v. | ) |
| STEPHANIE JOHNSON | )  Case No.  8:19-MJ-403 (GLF) |
| | ) |
| Defendant(s) | ) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief. On or about the date(s) of June 26, 2019 in the county of Saint Lawrence in the Northern District of New York the defendant(s) violated:

*Code Section*  
21 U.S.C. §841(a)(1) and (b)(1)(C)

*Offense Description*  
Possession with intent to distribute a controlled substance, to wit a mixture or substance containing a detectable amount of marijuana

This criminal complaint is based on these facts:  
See Attached

☒  Continued on the attached sheet.

_____  
*Complainant's signature*  
Michael Barcelona, SA, DEA  
*Printed name and title*

Sworn to before me and signed in my presence.

Date: June 28, 2019

_____  
*Judge's signature*  
Hon. Gary L. Favro, U.S. Magistrate Judge  
*Printed name and title*

City and State: Plattsburgh, NY

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Michael E. Barcellona, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I am a peace officer as specified in Section 2.15, Subdivision 5, of the Criminal Procedure Law, my title being Special Agent, Drug Enforcement Administration, United States Department of Justice. I am currently assigned to the Plattsburgh Resident Office in Plattsburgh, New York. I have been a Special Agent with the Drug Enforcement Administration (DEA) since completion of the DEA Training Academy in Quantico, Virginia, in February 2017. After completion of the Basic Agent Training program, I was assigned to the Plattsburgh Resident Office, New York Field Division. In this capacity I work on the DEA Plattsburgh Task Force ("Task Force"), which comprises agents from the DEA, Federal Bureau of Investigation (FBI), Homeland Security Investigations (HSI), United States Border Patrol (USBP), New York State Police (NYSP), New York Department of Corrections and Community Supervision (NYSDOCCS), Clinton County Sheriff's Office (CCSO), Essex County Sheriff's Office, and Plattsburgh Police Department (PPD).

2. I have participated in numerous narcotics investigations, during the course of which I have conducted physical and telephonic wiretap surveillance, executed search warrants, and reviewed and analyzed recorded conversations and the records of drug traffickers. Through my training, education, and experience (including monitoring wiretapped conversations of drug traffickers and conducting surveillance on numerous occasions of individuals engaged in drug trafficking), I have become familiar with the manner in which illegal drugs are imported and distributed, the method of payment for such drugs, and the efforts of persons involved in such activities to avoid detection by law enforcement.

3. I have participated in the investigation of complex narcotics enterprises, including major narcotics organizations. These investigations included the use of court-ordered eavesdropping. I have also conducted extensive analyses of telephone billing and call records for telephones used by

narcotics traffickers. Members of the Task Force also have extensive experience in narcotics investigations, especially involving high-level narcotics traffickers and money launderers. I have had and continue to have conversations with them concerning this and other narcotics-related investigations.

4.  I make this affidavit based upon my personal knowledge and upon information received by me from other law enforcement officials. The statements of fact contained in this affidavit are based upon my personal knowledge, participation in the investigation, information provided by agents of the DEA and other law enforcement agencies, analysis of documents, and my experience and training as a Special Agent. As a result of my participation in investigation, I am fully familiar with the facts and circumstances of the investigation.

## PROBABLE CAUSE

5.  On June 26, 2019, at approximately 4:30 p.m. members of the Ogdensburg Border Patrol Station established a vehicle check point on New York State Highway 37 at Little Sucker Brook Park which is located in Waddington, New York. At approximately 6:30pm, a black Ford Explorer bearing New York registration GYD 2057 approached the check point. Supervisory Border Patrol Agent (SBPA) Edward Sheffield approached the vehicle and observed that the vehicle was occupied by two females. Agent Sheffield noticed the driver was visibly nervous and would not make eye contact. Agent Sheffield also observed the driver searching in the center console of the vehicle, as he approached. The driver would later be identified as Stephanie Lee JOHNSON and the passenger as Shawna ETIENNE. Agent Sheffield asked the driver where JOHNSON was headed to and JOHNSON stated she was headed to a lacrosse game in Watertown, New York. Agent Sheffield then asked where she was headed from and JOHNSON stated that she had left the Akwesasne Indian Reservation. Agent Sheffield observed three (3) large black duffel bags that appeared to be perfectly square in the rear cargo area and two (2) other black duffel bags in the rear passenger seat which also appeared to be perfectly square. Based on his training and experience, Agent Sheffield understands

the Akwesasne Indian Reservation to be a main drug trafficking artery for the movement of narcotics from Canada into the United States. Agent Sheffield also understood that large duffel bags are typically used to hold large amounts of drugs. At this time SBPA Sheffield referred JOHNSON and the vehicle to secondary inspection.

6.  At the secondary inspection area SBPA Sheffield asked standard pedigree questions of JOHNSON and ETIENNE and also asked what was inside of the five (5) black duffel bags. JOHNSON said they contained lacrosse equipment; SBPA Sheffield, having played lacrosse, did not believe that the bags contained lacrosse equipment. SBPA Sheffield drew upon his experience as a lacrosse player and knew that bags containing lacrosse equipment would not appear perfectly square but would instead appear lumpy and uneven do to the odd and uneven shapes of the equipment. The five (5) duffel bags appeared to be evenly shaped without lumps, unevenness or dead spaces in them. SBPA Sheffield then asked JOHNSON if the vehicle was hers to which JOHNSON answered that it was not. SBPA Sheffield then asked if JOHNSON knew the owner of the vehicle and JOHNSON replied that she did not know the owner of the vehicle. SBPA Sheffield then asked ETIENNE if she knew the owner of the vehicle and ETIENNE answered that she did not know the owner of the vehicle.

7.  While in secondary inspection SBPA Sheffield detected a strong odor of marijuana upon opening the rear hatch of the vehicle. SBPA Sheffield did not previously detect the odor due to the strong wind conditions encountered during the initial stop. Concurrent to the questioning at the secondary inspection, Border Patrol Agent (BPA) Joseph Sorrento was called to respond to the inspection with his canine partner "Kelly," who is certified in the detection of controlled substances. BPA Sorrento arrived at approximately 6:57pm and deployed canine "Kelly" to perform a free air sniff of the vehicle bearing NY registration GYD2057. Canine "Kelly" positively alerted at the rear passenger side door of the vehicle. Based on BPA Sorrento's training and experience, a canine alert is indicative of the presence of narcotics. BPA Sorrento then opened the car door to allow canine

"Kelly" to continue to follow the source of the odor. Canine "Kelly" then alerted on a large black duffel located in the passenger compartment behind the center console. The large black duffel bag was then opened and found to contain numerous plastic vacuum sealed bags containing a green leafy substance. Subsequently the other black duffel bags were searched and found to contain vacuum sealed bags containing a green leafy substance. SBPA Sheffield transported the suspected marijuana back to the Ogdensburg Border Patrol Station where the suspected marijuana tested positive for the presence of THC. SBPA Sheffield then weighed the individual vacuum sealed packages which totaled two-hundred (200) bags with an approximate field weight of two-hundred and twenty-six point one (226.1) pounds. Both JOHNSON and ETIENNE were transported to the Ogdensburg Border Patrol Station.

8.  Agents interviewed each separately. JOHNSON was provided her Miranda warnings and initially agreed to answer questions. During JOHNSON's interview she gave contradictory answers as to where she was going and evaded answering questions presented by Agents. JOHNSON then invoked her right to remain silent, and the questioning was terminated. Agents then provided Miranda warnings to ETIENNE and she agreed to answer questions. During her interview, ETIENNE explained that JOHNSON had contacted her about traveling from Ogdensburg, NY to Watertown, NY to attend a lacrosse game. When asked about the five (5) duffel bags of marijuana, ETIENNE stated that she believed they contained lacrosse equipment. ETIENNE explained that she knew nothing more.

                                                Michael Barcelona, Special Agent, DEA

Sworn to and subscribed to before
me this 28th day of June 2019

Hon. Gary L. Favro
United States Magistrate Judge
Norther District of New York